J-S62005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STANLEY ALTON, JR. | : | |
| | : | |
| Appellant | : | No. 1375 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 23, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012885-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:       **FILED FEBRUARY 3, 2020**

Stanley Alton appeals from the judgment of sentence entered on August 23, 2018, in the Allegheny County Court of Common Pleas after the trial court convicted him of possession of ecstasy pursuant to a stipulated non-jury trial. On appeal, Alton contends the trial court erred in failing to suppress the ecstasy as he believes the frisk violated his constitutional rights. After careful review, we affirm.

While on routine patrol, Pittsburgh Police Officers Dixon and Grey watched as an SUV drove through a stop sign at a high rate of speed. Due to the motor vehicle violations, they pursued the SUV and pulled it over.

When Officers Dixon and Grey approached the vehicle, an odor of marijuana streamed from the car as the driver lowered his window. The officers requested identification from the driver, Terrence Morgan, and his passenger, Alton. Both men complied.

After conducting identification and warrant checks, the officers discovered that Morgan had an outstanding arrest warrant and a suspended driver's license. As a result, Morgan was placed in custody, and Alton was patted down. No weapons were found on Alton.

However, during the pat down, Officer Dixon felt a bulge in Alton's pocket that, based on his training and experience, indicated to him it was potential contraband. Shortly thereafter, Alton acknowledged that the object was ecstasy, and Officer Dixon placed him in custody. The officers then performed a search of Morgan's vehicle and discovered a loaded handgun in the glove compartment.

Following his arrest, Alton filed a motion to suppress the ecstasy, claiming he was subject to an illegal search. The trial court denied his motion and held the case for trial. The court found Alton guilty of one count of possession of a controlled substance and sentenced him to 3 to 6 months' imprisonment.[1] This appeal is now properly before us.

In his brief, Alton raises two issues for our review: (1) the police failed to establish the requisite reasonable suspicion to perform a protective frisk of his person; and (2) the seizure of the pills violated the plain feel doctrine. **See** Appellant's Brief, at 9, 11.

As an initial matter, we must address the Commonwealth's argument that Alton waived his second claim. The Commonwealth here contends that

_____

[1] **See** Pa.C.S.A. 35 § 780-113(a)(16).

Alton failed to include his plain feel argument in his Pa.R.A.P. Rule 1925(b) statement. **See** Appellee's Brief, at 35. Our review of Alton's 1925(b) statement confirms the Commonwealth's assertion, and Alton has not filed a reply brief responding to the Commonwealth's claim. As our Supreme Court has noted, "any appellate issues not raised in a Rule 1925(b) statement will be deemed waived." **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011). Therefore, based on our review of his Rule 1925(b) statement, we agree with the Commonwealth that Alton waived this claim.

In his sole preserved issue on appeal, Alton contends the trial court erred in denying his motion to suppress. In particular, Alton argues that Officer Dixon failed to establish there was reasonable suspicion to believe he was armed and dangerous. **See** Appellant's Brief, at 11. Moreover, because Officer Dixon lacked reasonable suspicion, Alton asserts that he was subject to an illegal frisk as a result. **See id**. Therefore, Alton concludes the ecstasy was illegally obtained.

The Commonwealth counters that Officer Dixon possessed the requisite reasonable suspicion to conduct a frisk of Alton. Indeed, the Commonwealth argues that the smell of marijuana and the driver's arrest were specific and articulable facts from which Officer Dixon could reasonably infer that Alton was armed and dangerous. **See** Appellee's Brief, at 24-25. As such, the Commonwealth concludes the trial court did not err in denying Alton's motion to suppress.

In reviewing the denial of a suppression motion, we must determine whether the record supports the lower court's factual findings and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Raglin**, 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions *de novo*. **See Commonwealth v. Hughes**, 836 A.2d 893, 898 (Pa. 2003).

Here, it is important to note that Alton does not challenge the initial traffic stop or the subsequent search of the vehicle. **See** Appellant's Brief, at 10. To that end, there is no dispute that Officers Dixon and Grey conducted a lawful traffic stop, based upon violations of the Motor Vehicle Code, and a permissible search of the vehicle. Further, our review of the record indicates that such conduct was legally permissible. Accordingly, we will only address whether Officer Dixon had reasonable suspicion to conduct a pat down search of Alton after Morgan was placed in custody.

A police-citizen encounter may implicate the liberty and privacy interests of the citizen as guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution. **See Commonwealth v. Smith**, 172 A.3d 26, 31 (Pa. Super. 2017). Fourth Amendment jurisprudence recognizes three levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. **See id**., at 32.

The first of these interactions is a mere encounter, which need not be supported by any level of suspicion, as it carries no official compulsion for a citizen to stop or respond. *See Raglin*, 178 A.3d at 871. The second, an investigative detention, must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not constitute an arrest. *See Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016). Finally, a custodial detention or an arrest must be supported by probable cause. *See Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008).

In the instant case, Officer Dixon conducted a frisk of Alton pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). A *Terry* frisk is a type of investigative detention in which an officer briefly detains a citizen if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." *Commonwealth v. Fitzpatrick*, 666 A.2d 323, 325 (Pa. 1995). If an officer is justified in believing the detained individual is armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. *See Commonwealth v. Scarborough*, 89 A.3d 679, 683 (Pa. Super. 2014). Accordingly, a *Terry* frisk applies to traffic stops, such as the one here, in the same way as other typical police encounters. *See Commonwealth v. Mesa*, 683 A.2d 643, 646 (Pa. 1996).

To conduct a *Terry* frisk for weapons, the police must have reasonable suspicion. *See Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super.

2011). "In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous." *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008) (citation omitted). Further, the facts indicating that an individual is armed and dangerous must be viewed under the totality of the circumstances. *See Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011). If either the initial stop or the frisk is found to be unreasonable, all evidence derived from the illegal government activity must be excluded. *See Simmons*, 17 A.3d at 403.

Alton, as an occupant of the vehicle, was subject to a *Terry* frisk by Officer Dixon following Morgan's arrest. Generally, "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subject to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." *Commonwealth v. Jackson*, 907 A.2d 540, 543-44 (Pa. Super. 2006) (citing *United States v. Berryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971). In other words, an arrestee's companion, like Alton, may be frisked if there is reasonable suspicion that the companion is armed and dangerous. *See id*., at 544-45. However, we cannot conclude in this case that Officer Dixon established the requisite reasonable suspicion to pat down Alton for weapons.

Here, Officer Dixon identified no specific, articulable facts that would indicate Alton was armed or dangerous. The pat down, as Officer Dixon testified, was performed based on the totality of the circumstances in this

case; namely, the smell of marijuana and Morgan's outstanding arrest warrant. **See** N.T., Hearing, 06/12/18, at 8. Although the smell of marijuana may indicate illegal activity, Pennsylvania does not recognize the "guns follow drugs" presumption as a basis to justify a frisk for weapons. **See Commonwealth v. Grahame**, 7 A.3d 810, 816 (Pa. 2010). In addition, there is no evidence that Alton's conduct conveyed a threat of danger to Officer Dixon. The pat down of Alton was therefore illegal due to the absence of reasonable suspicion.

Although the suppression court incorrectly found reasonable suspicion existed here to frisk Alton, the error is not consequential to our conclusion because the suppression court's legal findings are not binding on this Court. **See In re O.J.**, 958 A.2d 561, 564 (Pa. Super. 2008). Moreover, "if the record supports the result reached by the suppression court, we may affirm on any ground." **Commonwealth v. Brown**, 64 A.3d 1101, 1105 n.3 (Pa. Super. 2013) (citation omitted). Therefore, we can affirm the trial court's denial of Alton's motion to suppress if we conclude another basis exists to justify the **Terry** frisk here.

In its brief, the Commonwealth asserts there is an alternative basis upon which to affirm the suppression court's decision in this case: the inevitable discovery doctrine. **See** Appellee's Brief, at 27. The Commonwealth argues there was probable cause to search Morgan's car based upon the odor of marijuana that was detected by the officers during the traffic stop. **See id**., at 31-32. After police discovered the firearm inside the vehicle, the

Commonwealth asserts that Officer Dixon would have had at least reasonable suspicion to believe Alton might have also had a firearm on his person. *See id*., at 34. Therefore, on that basis, the Commonwealth contends that the frisk would have resulted in the inevitable discovery of the drugs on Alton's person. *See id*. For that reason, the Commonwealth concludes we should affirm the suppression court's decision.

The inevitable discovery doctrine provides that "evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence." ***Commonwealth v. Ingram***, 814 A.2d 264, 272 (Pa. Super. 2002). This doctrine requires that the evidence at issue would have been discovered inevitably despite the initial illegality. ***See Commonwealth v. Gonzalez***, 979 A.2d 879, 890 (Pa. Super. 2009). Consequently, the burden of proving such inevitable discovery, by a preponderance of the evidence, rests with the Commonwealth. ***See Commonwealth v. Hoffman***, 589 A.2d 737, 743 (Pa. Super. 1991).

Here, Alton was arrested after Officer Dixon patted him down and located the ecstasy pills in his pocket. Although Officer Dixon lacked reasonable suspicion to frisk Alton initially, the officer would have eventually acquired reasonable suspicion to pat him down. The lawful search of Morgan's car for marijuana in which police found a firearm would have provided Officer Dixon with reasonable suspicion to frisk Alton for weapons. ***See Commonwealth v. Powell***, 934 A.2d 721, 723-24 (Pa. Super. 2007) (holding that pat down of passenger was justified where police had already

retrieved a gun from the driver). And so, Officer Dixon's pat down of Alton would have resulted in the inevitable discovery of the drugs in his pocket.

Hence, we conclude that the Commonwealth established by a preponderance of the evidence that the drugs in Alton's pocket would have been inevitably discovered absent police error. For that reason, the record supports the suppression court's finding that the evidence was not subject to suppression.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/3/2020